CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 3 0 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERTA M.,[1] | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:18-CV-243 |
| | ) | |
| ANDREW SAUL, | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | Chief United States District Judge |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff Roberta M. ("Roberta") has filed this action challenging the final decision of the Commissioner of Social Security in denying her claim for a period of Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 401-433. In her motion for summary judgment, ECF No. 14, Roberta argues that the administrative law judge ("ALJ") erred by failing to properly analyze evidence from her treating physician and that the Appeals Council erred when it declined to consider additional evidence she submitted after the hearing. The Commissioner responded in his own motion for summary judgment, ECF No. 19, that substantial evidence supports the denial of disability benefits and that the Appeals Council properly declined to consider the additional evidence.

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United states that courts use only the first name and last initial of the claimant in social security opinions.

As discussed more fully the below, the court finds that substantial evidence does not support the ALJ's determination to accord little weight to the opinion of Roberta's treating physician on the effects of her impairments. The court further finds that the additional evidence was properly excluded by the Appeals Council. Accordingly, Roberta's motion for summary judgment is **GRANTED**; the Commissioner's motion for summary judgment is **DENIED**; the ALJ's determination is **VACATED**, and this case is **REMANDED** for further consideration consistent with this opinion.

## I. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means

only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Nevertheless, remand is appropriate when the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636-637 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"). See also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## II. Claim History

Roberta was born on December 2, 1963 and graduated from high school. R. 53. Her past relevant work includes being a childcare or daycare worker and working as a general motor vehicle assembler. R. 76. Roberta filed an application for DIB on August 21, 2014, alleging an onset date of October 9, 2013. R. 17. She was last insured for purposes of DIB on December 31, 2014, giving her a narrow window in which to establish her disability—from October 9, 2013 through December 31, 2014.

Roberta alleged disability based on systemic lupus erythematosus and scleroderma, Sjogren's syndrome, Reynaud's phenomenon, fibromyalgia, impingement of the right

3

shoulder-failed surgical repair, depression, anxiety, panic attacks, migraine headaches, chronic

fatigue, and arthritis in her arms, hands, hips, knees, wrists, and elbows. R. 271. The application

was denied at the initial and reconsideration levels of review. R. 113-117, 122-128. On April

11, 2017, ALJ Geraldine H. Page held a hearing to consider Roberta's claim for DIB. Roberta

was represented by counsel and a vocational expert also testified. R. 51-82.

On July 19, 2017 the ALJ rendered an opinion finding Roberta not disabled, applying

the five-step evaluation process described in the regulations.[2] R. 17-27. The ALJ first found

that Roberta last met the insured status requirements on December 31, 2014 and that she had

not engaged in substantial gainful activity during the period from her alleged onset date of

October 9, 2013 through December 31, 2014. The ALJ further found that Roberta had the

following severe impairments--right shoulder degenerative joint disease; lumbosacral

degenerative disc disease; history of injury to the bilateral knees, mixed connective tissue

disease ("MCTD") (including features of scleroderma, lupus, Sjogren's syndrome, Reynaud's

---

[2] The ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1, or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Id. At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. at 635. The claimant bears the burden of proof on the first three steps and the burden shifts to the Commissioner on the fifth step. Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015).

4

syndrome, arthralgias, and sicca), and inflammatory arthritis--but that none of the impairments or combination of impairments met or medically equaled the severity of a listed impairment.

The ALJ then found that Roberta had the residual functional capacity ("RFC") to do light work with additional limitations of pushing and pulling occasionally with the right upper extremity and the bilateral lower extremities; could never crawl; would need to avoid all exposure to hazardous machinery; and could not work at unprotected heights, climb ladders, ropes, or scaffolds, or work on vibrating surfaces. She could occasionally climb ramps and stairs, balance, kneel, stoop, and crouch. She could frequently handle, feel, and finger with the bilateral hands and could occasionally reach overhead with her right shoulder. The ALJ found that Roberta could not return to her past relevant work, but could do other work that exists in the national economy. Based on testimony by the vocational expert, the ALJ found that Roberta could do work such as that of a cafeteria attendant, ticket taker, or cashier II. R. 17-27.

## III. Evidence

### A. Medical Records

In February 2014 Roberta reported to her health care provider that for the previous six months she had been having soft tissue pain and swelling along with difficulty using her hands for fine motor skills. She also had pain in her knee, hip, and elbow joints. She reported a history of nodularity in both hands, which usually was worse in the morning and caused decreased mobility and pain. R. 658. X-rays of her feet showed that she had bilateral osteotomies involving the distal front metatarsals and had orthopedic hardware in the form of

5

two small cortical screws with no evidence of hardware failure or loosening. She also had minimal osteoarthritis involving both first MTP joints. R. 544. X-rays of her hands showed minimal periarticular osteopenia. R. 545.

ANA testing was positive and she was referred to Edward Tackey, M.D., a rheumatologist, who diagnosed her with inflammatory arthritis, positive ANA, and Raynaud phenomenon. R. 557. In March 2014 Roberta reported aches and pains she described as 7/10, worse with activity and better with rest. Her wrists and hand joints were tender. She also reported shortness of breath. Dr. Tackey diagnosed Roberta with Lupus, Raynaud phenomenon, and Sicca syndrome. R. 554.

Roberta began to see rheumatologist Joseph Lemmer, M.D., in June 2014, reporting generalized moderate worsening pain, particularly in her lower legs, feet, forearms, hands, chest, and back. She had generalized puffiness in the hand, Reynaud phenomenon, dryness of the eyes and mouth, poor sleep, fatigue, and anxiety. Dr. Lemmer assessed Roberta with overlapping connective tissue disease with features of lupus, scleroderma, and Sjogren syndrome, manifested by arthralgias, puffy hands, Reynaud phenomenon, dry eyes and mouth, and positive anticardiolipin antibodies; pleuritic type chest pain, possibly related to the connective tissue disease, dysesthesia of the feet with possible peripheral neuropathy, possibly related to the connective tissue disease; generalized myalgias and arthralgias with tender points consistent with fibromyalgia syndrome; sleep disturbance and fatigue, probably associated with chronic pain syndrome; shortness of breath, possibly psychophysiological; and hyperlipidemia. R. 552. A pulmonary function study was normal. R. 548.

Roberta saw Dr. Lemmer again in September 2014, and he noted that she was mildly symptomatic, but unstable. In addition to his previous assessment, he noted that her pleurisy had improved but her fibromyalgia syndrome, sleep disturbance, and fatigue syndrome had worsened. She also had nausea, possibly caused by her medications. R. 546.

In November 2014, Dr. Lemmer described Roberta as symptomatically stable without signs of significant end-organ disease, with a normal echocardiogram and pulmonary function test. R. 622. He commented that her generalized myalgias, arthralgias, and tender points were worsening, consistent with fibromyalgia syndrome, which he described as her "currently main problem." R. 22.

On April 15, 2015, Dr. Lemmer completed a questionnaire regarding Roberta's limitations related to fibromyalgia and chronic fatigue syndrome, with the notation that her limitations related back to October 9, 2013. He commented that Roberta met the American College of Rheumatology criteria for fibromyalgia and that she also had undifferentiated connective tissue disease. Her prognosis was guarded. R. 670.

Dr. Lemmer identified Roberta's symptoms as multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, irritable bowel syndrome, frequent severe headaches, female urethral syndrome, vestibular dysfunction, numbness and tingling, Sicca symptoms, Raynaud's Phenomenon, anxiety, panic attacks, and depression. He opined that her pain and other symptoms would frequently interfere with her attention and concentration during the workday. He stated that she could sit for about four hours per day and stand and walk less than two hours. She could occasionally lift ten pounds

and rarely lift twenty pounds. She could rarely twist, stoop, crouch, climb ladders or stairs and had significant limitations doing repetitive reaching, handling or fingering. R. 670-671.

She had unexplained persistent or relapsing chronic fatigue of new or definite onset that resulted in substantial reduction in her previous levels of activity. She also had self-reported impairments in her short-term memory or concentration severe enough to cause a substantial reduction in her previous activity levels. Dr. Lemmer also noted that Roberta had muscle pain, multiple joint pain without swelling or redness, headaches of a new type, pattern or severity, unrefreshing sleep, and post-exertional malaise lasting more than twenty-four hours. R. 671-672.

Her impairments were likely to produce good days and bad days and she was likely to miss more than four days per month of work. Dr. Lemmer said her limitations would include no repetitive use of her limbs, no repetitive bending or lifting, no lifting of more than ten pounds, and no work in a cold or damp environment. She frequently would be absent from work. R. 672-673.

Roberta continued to see Dr. Lemmer after her date last insured. In April 2015 she reported worsening pain in her hips, buttocks, elbows, and head. Her dry eyes and dry mouth symptoms were minimal to none. He recommended massage, heat, stretching, stress management, and improved sleep. R. 735-736. An X-ray of her lumbar spine in September 2015 showed small hypertrophic spurs at all lumbar disc spaces, but the disc spaces themselves were well maintained. The report noted "probable paravertebral muscle spasm." R. 738.

In April 2016 Roberta reported temporary and partial improvement in pain, swelling, and stiffness of the finger joints with a prednisone taper, generalized aching in the rib cage, back, elbows, shoulders, wrists, and feet. She had puffiness in her hands. She also reported varying amounts of pain in the right sciatica area as mild to moderate. R. 729. Dr. Lemmer assessed her with undifferentiated connective tissue disease, fibromyalgia, right lumbar radiculopathy, and a sleep disorder. R. 730-731. In July 2016 Roberta's chief complaint was bilateral wrist pain. She also had trouble moving her right thumb and lifting and gripping. She had little pain other than generalized myalgias and on-off right sciatica pain. Dr. Lemmer commented that Roberta presented with a form of sclerodermatous-like disorder manifested by mild tightness of the skin on her hands and Raynaud's phenomenon. Her problem appeared to be stable to slowly progressive. R. 726-728.

### B. Hearing Testimony

At the hearing, Roberta testified that prior to her date last insured she had problems with her right shoulder following a fall several years earlier and could not lift it up all the way or lift it in front of her. She had to lift things close to her body and did not believe she could lift more than ten pounds. She would need two hands to lift a gallon of milk and could not do it repetitively. R. 57, 67. She could stand for one half hour and walk for one half hour on a flat surface. R. 58-59. She had last worked as a caregiver for four children but was not able to keep up with it. R. 55. Since resigning from that job she had stayed home, doing what cleaning she could around the house, and preparing one meal per day. R. 59. Her biggest problems are pain and spasms in her back, and pain and swelling in her hands and wrists. R. 61.

Since 2014 the fibromyalgia has caused her a lot of pain. She cannot stand for anyone to touch her skin and she has pain through her chest and back and is fatigued all the time. R. 66. If she gets the least bit cold, she loses circulation in her hands and toes. The loss of circulation in her hands makes it difficult to pick things up. R. 66-67. The scleroderma results in her hands swelling in the morning, causing the skin to become tight and shiny. R. 68. A lot of the medication she takes causes stomach upset. R. 69-70. She spends approximately four hours per day lying on the couch with a heating pad and must rest in between household chores. R. 70-71, 74.

### C. Medical Opinion Evidence

State agency physicians Gene Godwin, M.D., and James Darden, M.D., assessed Roberta's RFC, finding that she could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand, walk, or sit for a total of six hours; push and pull without limitation; occasionally climb ropes, ladders, or scaffolds, kneel, crouch, or crawl; and frequently stoop. In addition, the experts found that Roberta had no manipulative or visual limitations, but should avoid concentrated exposure to extreme cold, heat, wetness, humidity and hazards such as machinery or heights. R. 91-93.

## IV. Analysis

### A. Opinion of Treating Physician

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 Fed. Appx. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown v. Comm'r

of Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018)). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations and internal quotations omitted).[3] If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ must consider a non-exclusive list of factors to determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source. Testamark, 736 Fed. Appx. at 398.

Under SSR 96-2P,[4] an adjudicator may give a treating source's medical opinion controlling weight when it is found to be well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the individual's case record. SSR 96-2P, 1996 WL 374188 at *2. "Not inconsistent" means that while a well-supported treating medical source opinion need not be supported directly by all

---

[3] The Social Security Administration has amended the treating source rule effective March 27, 2017, for cases filed after that date. Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because this case was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

[4] SSR96-2P was rescinded effective March 27, 2017 as part of the amendment of the treating source rule. SSA-2012-0035, 2017 WL 3928298. However, it was in effect at the time the ALJ adjudicated Roberta's claim.

the other evidence, no other substantial evidence in the case record contradicts or conflicts with the opinion. Id. at *3.

If an adjudicator finds that a treating medical source opinion is not entitled to controlling weight because it is not well-supported by other evidence in the record or is inconsistent with other substantial evidence in the record, it does not mean that the opinion should be rejected. Rather, it still is entitled to deference and must be weighed using all the factors in 20 C.F.R. §§ 404.1527 and 416.927. The opinion may still be entitled to the greatest weight, even if it does not meet the test for controlling weight. SSR 96-2P, 1996 WL 374188 at *4. If the adjudicator denies disability, the notice of denial must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. Id. at *5.

In assessing Roberta's RFC, the ALJ first summarized Roberta's subjective complaints of symptoms and impairments, and then summarized her treatment history. R. 22-23. The ALJ stated that Roberta's treatment history reflected consistent and regular pursuit of treatment but did not fully support her allegations. The ALJ stated that clinical observations and other evidence generally have been normal, mild, or moderate; that her connective tissue disease has not produced significant end-organ disease; echocardiogram and pulmonary function tests have been normal; and she can clean house, prepare meals, and attend to personal care limited

only by the alleged need for breaks. The ALJ then discussed the opinions of the state medical consultants and the RFC assessments they provided. R. 24.

In turning to Dr. Lemmer's assessment of Roberta's limitations, the ALJ recited the doctor's conclusions about Roberta's RFC and then stated, "Dr. Lemmer provides little support for this extreme position. It is for the most part inconsistent with the considerations raised above, in assessing the claimant's allegations for consistency with the record. I give this opinion little weight." R. 24.

Roberta argues that the ALJ did not properly evaluate and credit Dr. Lemmer's opinion in accordance with 20 C.F.R. § 404.1527 and SSR 96-2P. She asserts that if the ALJ had accepted Dr. Lemmer's opinion as controlling, it would have warranted a finding that she was disabled. The court agrees. The ALJ failed to discuss any of the factors forth in 20 C.F.R. § 404.1527 and the determination is otherwise vague regarding the reasons for discounting Dr. Lemmer's opinion and giving it little weight.

The ALJ did not specify which of Dr. Lemmer's were inconsistent with the record. Dr. Lemmer evaluated Roberta's exertional limitations, postural limitations, manipulative limitations, and her ability to work a full workday and workweek. Even if Dr. Lemmer's opinion is entitled to little weight on one or more of these limitations, a finding that it is entitled to controlling weight, or greater weight, on another of the limitations could change Roberta's RFC. See SSR 96-2P, 1996 WL 374188 at *2 ("Although it is not necessary in every case to evaluate each treating source medical opinion separately, adjudicators must always be aware that one or more of the opinions may be controlling while others may not.")

Nor did the ALJ specify which part of the record is inconsistent with Dr. Lemmer's assessment. Her reference to "the considerations raised above" refers to multiple paragraphs, including Roberta's testimony at the hearing, which is mostly consistent with Dr. Lemmer's assessment; her treatment history, some of which is consistent with Dr. Lemmer's assessment; and the opinions of the state agency medical consultants, which were partially consistent with Dr. Lemmer's assessment. In sum, the lack of reference to specific findings by Dr. Lemmer and to specific parts of the record that are inconsistent with his findings, frustrates meaningful review of the ALJ decision. See Mascio, 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusions . . . and indeed, remain uncertain as to what the ALJ intended, remand is necessary.")

In his brief, the Commissioner argues that Dr. Lemmer's assessment conflicted with the state agency medical consultants who found that Roberta can do light work. He further argues that many of her limitations have been described as mild or moderate in the medical records and her objective medical tests were largely normal, negative, or unremarkable. However, in reviewing a determination by an administrative agency, the court must judge the propriety of the action solely on the grounds invoked by the agency. Bailey v. Berryhill, No. 2:16-CV-07044, 2017 WL 3834990 at *11 (S.D.W.V 2017) (citing Burlington Truck Lines, Inc., v. United States, 371 U.S. 156, 159 (1962)). See also Williams v. Colvin, No. 6:11-2344-GRA-KFM, 2013 WL 877128 at *6 (D.S.C. 2013) (finding that if ALJ's explanation of weight she gave to physician's opinion is not specific enough under SSR 96-2p, court cannot accept post-hoc citation by Commissioner to evidence ALJ may have considered); Hilton v. Astrue, No.

6:10-2012-CMC, 2011 WL 5869704 at *4 (finding court cannot accept post-hoc rationalizations not contained within ALJ decision). Thus, the court cannot rely on the Commissioner's citations to the record to find that the ALJ's analysis of the treating physician opinion in this case is based on substantial evidence.

A more detailed analysis of Dr. Lemmer's assessment is important for all of Roberta's alleged impairments, but particularly for her manipulative impairments. Roberta testified that when she has a flareup of the Reynaud's phenomenon she loses circulation in her hands. Also, the scleroderma causes her hands to swell, which is painful and makes it difficult to make a fist, especially in the morning. Both the Reynaud's phenomenon and scleroderma are well-documented in the record and Dr. Lemmer opined that Roberta had significant limitations doing repetitive reaching, handling, or fingering. Nevertheless, the ALJ found that she could frequently handle, feel, and finger with both hands and found that representative work she could do included that of a cafeteria attendant, ticket taker, or cashier II, all of which involve repeated use of the hands.

Without a more detailed explanation of why the ALJ gave little weight to Dr. Lemmer's assessment, and especially of Roberta's manipulative limitations, the ALJ's opinion is not supported by substantial evidence. Accordingly, the court **REMANDS** Roberta's claim for further consideration of Dr. Lemmer's opinion regarding her limitations.

**B. Consideration of Additional Evidence**

In <u>Wilkins v. Sec'y Dep't Health and Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991), the Fourth Circuit held that "The Appeals Council must consider evidence submitted with the

request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" (quoting Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). In addition, there must also be a reasonable probability that the additional evidence would change the outcome of the decision and a claimant must show good cause for not submitting the evidence at least five days before the ALJ hearing. 20 C.F.R. §§ 404.970, 416.1470.

After the ALJ hearing, Roberta submitted additional medical records to the Appeals Council, including treatment records from Salem Rheumatology, P.A., and a medical source statement from Elliot Semble, M.D., Roberta's new treating rheumatologist. The treatment records are dated June 8, 2017 through November 6, 2017 and indicate that Roberta's fibromyalgia symptoms had worsened and she had a new diagnosis of CREST syndrome.[5] She reported pain and swelling in her hands lasting for one month. R. 33-48.

Dr. Semble's statement was dated November 14, 2017 but he checked a box indicating that it related back to August 21, 2014. He found limitations similar to those in Dr. Lemmer's assessment. R. 8-10. The Appeals Council declined to consider the evidence, finding that it did not affect the decision of whether Roberta was disabled through December 31, 2014.

Roberta argues that although the evidence was submitted four months after the denial decision, that Dr. Semble stated that the limitations imposed would have been applicable as

---

[5] CREST syndrome, also known as limited scleroderma, is a widespread connective tissue disease characterized by changes in the skin, blood vessels, and internal organs. It is characterized by calcium deposits in the connective tissues, Reynaud's phenomenon, esophageal dysfunction, thick and tight skin on the fingers, and small red spots on the hands and face. https://rarediseases.info.nih.gov/diseases/12430/crest-syndrome (last viewed September 26, 2019).

of August 2014, prior to the date Roberta was last insured. The Commissioner argues that the evidence is not "new" because it is cumulative or duplicative of evidence already in the record.

Because the court finds that remand is warranted in this case, it further finds that a discussion of the additional evidence in terms of <u>Wilkins</u> and 20 C.F.R. § 404.970 is not necessary. On remand, the Commissioner is directed to review all the evidence in the record, including the evidence submitted to the Appeals Council after the ALJ hearing.

## V. Conclusion

For the reasons stated, the Court finds the ALJ's determination to accord little weight to Roberta's treating physician is not supported by substantial evidence. Accordingly, the final decision of the Commissioner is **VACATED** and Roberta's case is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of the evidence as set forth above.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: 09/30/2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge